UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PERSAUD PROPERTIES FL
INVESTMENTS, LLC,

       Plaintiff,

v.                                        Case No. 2:21-cv-384-JLB-NPM

TOWN OF FORT MYERS BEACH,
FLORIDA,

       Defendant.

_____

## ORDER

This matter arises out of the Town of Fort Myers Beach's ("the Town") Motion to Dismiss Plaintiff Persaud Properties FL Investments, LLC's ("Persaud") Third Amended Complaint.  Prior iterations of Persaud's complaint have been bandied about the Florida state court system since 2017, but the underlying claims have remained largely unchanged.  Mindful of this case's labyrinthine record, this Court holds that, for the reasons outlined below, the Town's Motion to Dismiss Persaud's Third Amended Complaint (Doc. 22) is **GRANTED IN PART AND DENIED IN PART**.  Persaud, should it so decide, is granted leave to amend its Third Amended Complaint consistent with this Order.

## BACKGROUND

The Sunset Beach Tropical Grill ("the Grill") is a beachfront restaurant in the Town.  (Doc. 15 at ¶¶ 6–7.)  In 1974, the owners of the Grill received zoning approval to serve alcohol on the property, including the beachfront portion of the

1

Grill, which stretches to the shoreline of the Gulf of Mexico.  (Id. at ¶ 7.)  These original owners obtained a Florida state license issued by the Division of Alcoholic Beverages and Tobacco ("DABT"), permitting the service of alcohol on the entire property.  (Id. at ¶ 8.)  In 1984, the Grill was sold.  (Id. at ¶ 9.)  Included in this sale was the state-issued alcohol license and its attendant zoning approval to serve alcohol on the entirety of the Grill's property.  (Id.)

In 1995, the Town was incorporated, and with its incorporation came the enactment of various zoning regulations impacting the sale of alcohol on the land upon which the Grill sits.  (Id. at ¶ 10.)  The new zoning regulations effectively split the Grill into two parts.  While the part of the property zoned in the "Downtown" area of the Town received approval to serve alcohol, the beach portion of the property, zoned "Environmentally Critical," did not.  (Id. at ¶¶ 10–11.)  Still, the Town's zoning regulations established that zoning approval to serve alcohol runs with the land.  (Id. at ¶ 10(c)(1).)  Thus, even if the Grill was sold, the new owners would retain the Town's permission to serve alcohol on both the Downtown and the Environmentally Critical portions of the Grill's property.  (See id.)

In 2012, the Town adopted Ordinance No. 12-03, which allowed property owners in possession of "prior state alcohol licenses and zoning approval to serve alcohol on the beach" the option of having their property "grandfathered" in as a "nonconforming use."  (Id. at ¶ 12.)  Ordinance No. 12-03 also prescribed that "[n]onconforming uses may continue until there is an abandonment of the permitted location for a continuous nine-month period."  (Id. at ¶ 10(c)(2).)  The

2

owners of the Grill elected to maintain their rights from the 1974 zoning approval and state license and continued to serve alcohol—a nonconforming use—on the beach portion of the property, along with the Downtime portion of it.  (Id. at ¶ 13.)

Two years later, on July 31, 2014, Persaud purchased the Grill in a sale which included the state liquor license and the grandfathered 1974 approval to serve alcohol on the entire property, including the beach.  (Doc. 15 at ¶ 15.)  Three months after purchase, Persaud began extensive renovations on the property.  (Id. at ¶ 16.)  Persaud requested that the DABT temporarily suspend its liquor license while the renovations were ongoing.  (Id.)  On December 29, 2014, the DABT granted Persaud's request and placed its liquor license in inactive status.  (Id. at ¶ 19.)  But a four-month renovation plan stretched much longer due, at least in part, to the Town's issuance of multiple stop-work orders, which delayed renovations. (Id. at ¶ 18.)

Persaud completed its extensive renovations to the Grill property approximately a year after its liquor license was placed on inactive status.  (Id. at ¶ 20.)  To begin selling alcohol again, Persaud had to obtain the Town's approval.  (Id. at ¶ 21.).  The Town, however, would not permit Persaud to resume the Grill's liquor sales unless Persaud limited such sales to the areas of the property zoned "Downtown."  (Id. at ¶ 22.)  In other words, Persaud was prohibited from selling alcohol on the beach portion of its property.

Pointing to an ordinance that deemed any nonconforming liquor license "abandoned" if the property did not sell alcohol for nine months during the

renovation period, the Town determined that Persaud's grandfathered liquor license was void.  (Id. at ¶¶ 21–22.)  With the Town's denial of the sale of liquor on the beach portion of the Grill, Persaud nevertheless pushed forward to re-open the Grill and applied for a license limiting its sale of alcohol to the Downtown zoned area of the property.  (Id. at ¶ 26.)  The license was activated on October 22, 2015.  (Id. at ¶ 27.)  But the story does not end there.

On March 28, 2017, Persaud sued the Town in Florida state court.  (Doc. 1-4 at 3.)  The complaint contained, among other things, both federal and state constitutional claims.  The Town removed the case to this Court, but the case was remanded because Persaud had not exhausted its state law remedies.  See Persaud Props. FL Invs., LLC v. Town of Fort Myers Beach, No. 2:17-cv-227-FTM-99CM, 2017 WL 4868908, at *3 (M.D. Fla. Oct. 26, 2017).[1]  On remand to the state court, Persaud filed a First Amended Complaint, confining its claims to Florida constitutional issues.  (Doc. 1-4 at 171.)

The state trial court entered a judgment finding that the Town had properly determined that Persaud had abandoned the nonconforming use—the sale of

---

[1] At the time the Town removed Persaud's Original Complaint, the controlling approach to federal constitutional takings claims was outlined in Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank, which provided that a Fifth Amendment takings claim is not ripe until the plaintiff unsuccessfully pursued the claim in state court proceedings.  473 U.S. 172, 195 (1985).  The Williamson Cnty. approach has since been updated by that outlined by the Supreme Court in Knick v. Twp. of Scott, Pa., which provides that plaintiffs may bring federal constitutional takings claims without first bringing a lawsuit in state court, even where state court remedies addressing the underlying action are available.  139 S. Ct. 2162, 2172–2173 (2019).

alcohol on the beach portion—of the Grill because it had failed to sell alcohol on the property for the nine months.  (Doc. 1-6 at 134.)

Persaud appealed, and in a well-reasoned opinion authored by Judge Anthony Black, the Florida Second District Court of Appeal ("Second DCA") reversed and remanded, holding that Persaud is "entitled, under the applicable provisions of the Town's municipal code, to maintain the property's status as a grandfathered nonconforming use."  (Id. at 234–35.)  The Second DCA reasoned that the plain language of the Town's ordinance requires a showing that Persaud intended to abandon its nonconforming use of the property—the sale of alcohol at the Grill—by choosing to not sell alcohol during the renovations that took longer than nine months.  (Id.)  And because there was no dispute that Persaud did not intend to abandon its nonconforming use permit, the trial court's entry of summary judgment in favor of the Town, the Second DCA held, was in error as a matter of law.  (Id. at 234.)  The Second DCA therefore vacated the trial court's denial of Persaud's declaratory relief count and reversed the trial court's entry of judgment "as to all other counts."  (Id. at 235.)  The Second DCA then remanded to the trial court with instructions to vacate its judgment as to all counts and directed the trial court to enter an order granting Persaud judgment on its declaratory relief count (count one).  (Id. at 235.)

Thereafter, on February 26, 2021, the state trial court issued an order granting declaratory relief to Persaud, effectively restoring Persaud's permission to sell liquor on the beach portion of its property.  (See id. at 246.)

The following is what the state court declared, which is the entirety of the declaratory relief count (under Florida law) as set forth in Persaud's First Amended Complaint:

> a.   An order declaring that Persaud is entitled to Town zoning sign off on a state application that permits the sale of alcohol on the Beach consistent with the 1974 COP License and Town approval issued in 2014;
>
> b.   An order confirming a continuing right to sell alcohol on the Beach as a nonconforming use;
>
> c.   An order declaring that Persaud has never abandoned its right to continue serving alcohol on the Beach;
>
> d.   An order declaring that the Town wrongfully refused to grant zoning approval in contravention of its Land Development Code and failed to follow the procedures mandated in the Land Development Code prior to revoking Persaud's grandfathered use[;]
>
> e.   An order granting such further relief that this Court deems just and proper.

(Doc. 1-6 at 246; Doc. 1-4 at 179, ¶ 60.)

Although the nonconforming use permitting the sale of alcohol on the beach portion of the Grill was restored upon entry of the trial court's final judgment, (Doc. 22), and although Persaud was at no time completely deprived of the ability to sell alcohol at the Grill, Persaud nevertheless continued with its litigation.  (Doc. 1-6 at 251.)

On April 16, 2021, Persaud filed a Second Amended Complaint in state court, again seeking relief from the Town's refusal, six years earlier, to restore its liquor license for the beach portion of the Grill after its renovations.  (Id.)  The Town

moved to dismiss the Second Amended Complaint in state court, (Doc. 4), and then removed the case to this Court.  (Doc. 1.).

Once back in this Court, Persaud filed a Third Amended Complaint, which is now the operative pleading, seeking declaratory relief and damages against the Town under the Takings Clauses of the United States and Florida Constitutions, and the Due Process Clause of the Florida Constitution.  (Doc. 15.)  The Town subsequently filed a Motion to Dismiss, which is the issue for adjudication before the Court.  (Doc. 22.)

## DISCUSSION

Though the Town does not say so explicitly in its motion, it is presumed that it seeks to dismiss Persaud's Third Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which asserts the defense of failure to state a claim upon which relief can be granted.  To survive a motion to dismiss for failure to state a claim, plaintiffs need only plead sufficient facts to state a claim of relief that is plausible on its face.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

When evaluating a motion to dismiss under Rule 12(b)(6), a court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiffs.  See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance, 304 F.3d 1076, 1084 (11th Cir. 2002).

Importantly, though, this maxim does not apply to legal conclusions. Courts are "not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Pleadings that "are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679. "'[U]nwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of [the] plaintiff's allegations." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (quotation omitted). Further, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 682).

## I. Persaud Has Not Alleged a Valid Takings Claim Under the United States or Florida Constitutions.

While the specifics of the claim have been altered somewhat throughout Persaud's various pleadings, Persaud essentially argues that it had a property interest in its permission from the Town to sell alcohol on the beachfront portion of the Grill's premises. (Doc. 1-6 at ¶¶ 71–72; Doc. 15 at ¶¶ 28–29; Doc. 24 at 6.) Persaud argues that it was deprived of that property interest between October 22, 2015 and December 11, 2020.[2] (Doc. 24 at 6.) Such deprivation, Persaud contends,

---

[2] Persaud states that it was "precluded from the sale of alcohol on the beach from October 22, 2015 until after the Second District Court of Appeal determined that it had not abandoned its permit and was entitled to have it restored." (Doc. 24 at 6.)

constituted a taking under both the Fifth Amendment to the United States Constitution, and Article X, Section 6(a) of the Florida Constitution.  (Doc. 15 at ¶¶ 52–58.)  The Town argues that Persaud has not alleged a valid takings claim because it has not shown that it was deprived of all economically beneficial use of its restaurant when its permission to sell alcohol was curtailed.  (Doc. 22 at 9.)  For the reasons outlined below, the Court agrees with the Town that Persaud has not sufficiently alleged a cognizable takings claim.

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation."  U.S. Const. amend V.  The Clause is made applicable to the States through the Fourteenth Amendment.  See Chi., B. & Q.R. Co. v. Chicago, 166 U.S. 226, 236 (1897).  The Takings Clause of the Florida Constitution is identical to that of the United States Constitution, and accordingly, the two can be analyzed coextensively. See Highlands-In-The-Woods, L.L.C. v. Polk Cnty., 217 So. 3d 1175, 1180 (Fla. 2d DCA 2017).  As the Supreme Court has noted, the Takings Clause "does not prohibit the taking of private property, but instead places a condition on the exercise of that power."  First Eng. Evangelical Lutheran Church of Glendale v. County of Los Angeles, 482 U.S. 304, 314 (1987).  That is, the Takings Clause is "designed not to limit the governmental interference with property rights per se, but rather to secure

---

The Second DCA's Opinion was filed on December 11, 2020.  (Doc. 1-6 at 226.)  The Town's Motion for a Rehearing was denied on January 20, 2021.  (Doc. 1-6 at 218.) The Second DCA's Mandate was then issued on February 10, 2021.  (Id. at 225.) Therefore, since February 11, 2021, Persaud has been permitted to sell alcohol on the entirety of its property.  (Doc. 24 at 6.)

compensation in the event of otherwise proper interference amounting to a taking." Id. at 315 (emphasis in original).

There are several theories under which a plaintiff can challenge a government regulation as an uncompensated taking of private property.  See Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 537–38 (2005).  The archetypal takings requiring just compensation is a government seizure of private property. See, e.g., United States v. Pewee Coal Co., 341 U.S. 114, 115–16 (1951) (holding that an Executive Order "directing the Secretary of Interior to take immediate possession, so far as may be necessary or desirable, of any and all mines producing coal in which a strike or other stoppage has occurred or is threatened" constitutes a taking).  But government regulation of private property may also in some cases be deemed compensable under the Takings Clause where "its effect is tantamount to a direct appropriation or ouster." Lingle, 544 U.S. at 537.  Regulations that deprive an owner of "all economically beneficial use" of her property have been found to have such an effect. Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1019 (1992) (emphasis in original).  Finally, for those governmental intrusions that are not as severe as a direct government appropriation of private property or a total regulatory taking, but still impact a property owner's use of her private property, courts are instructed to apply what are known as the Penn Central factors.  See Lingle, 544 U.S. at 538 (explaining that outside a physical invasion of land or total deprivation, regulatory takings challenges are governed by Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 124 (1978)).

The Town's denial of Persaud's permission to sell alcohol was neither a direct governmental intrusion onto Persaud's private property, nor a total diminution of the economically beneficial use of that property.[3]  Therefore, Persaud's challenge should be assessed under the <u>Penn Central</u> factors.  The <u>Penn Central</u> factors include: (1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with distinct, investment-backed economic expectations, and (3) the character of the governmental action.  438 U.S. at 124.  Importantly, the <u>Penn Central</u> factors are applied to the parcel as a whole, not merely the portion of the property most affected by the challenged government action.  <u>See</u> <u>id.</u> at 130 (explaining that takings jurisprudence "does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated" and instructing courts to focus "both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole").  Accordingly, under the facts as pleaded, Persaud's property rights should be assessed as to the entirety of his parcel, including the portion of the Grill zoned "Downtown" and the portion of the Grill zoned on the beach.

---

[3] Again, Persaud concedes that at no time was it completely deprived of the ability to sell alcohol at the entire portion of the parcel on which the Grill sits.  Rather, it was precluded from selling alcohol on the beach portion of the property due to the Town's revocation of Persaud's non-conforming use permit.  (Doc. 15 at ¶ 28–30.)  But with the assistance of the Second DCA's decision in Persaud's favor, Persaud's nonconforming use permitting the sale of alcohol on the beach portion of the property was entirely restored.  (Doc. 1-6 at 225–35.)

Before proceeding to the three factors of a <u>Penn Central</u> analysis, however, the Court must determine whether Persaud has alleged that a protected property interest has actually been taken.  <u>Givens v. Ala. Dep't of Corr.</u>, 381 F.3d 1064, 1066 (11th Cir. 2004) ("Only if the plaintiff actually possesses such an interest will a reviewing court then determine whether the deprivation or reduction of that interest constitutes a 'taking.'").  As the Supreme Court has outlined, the meaning of property as applied in the context of the Fifth Amendment's Takings Clause is defined by local law.  <u>United States v. Causby</u>, 328 U.S. 256, 266 (1946).  The question here, then, is whether the Town's grant of permission to Persaud to sell alcohol on the beach portion of the Grill was a protected property interest under Florida law.

"It is established that a sovereign state, when functioning under its police power, may enact such measures as are reasonably calculated to be essential or necessary in behalf of the general welfare for the control and regulation not only of the sale but the possession of intoxicating liquors."  <u>State ex rel. Hoffman v. Vocelle</u>, 31 So. 2d 52, 54 (Fla. 1947).  The Supreme Court of Florida has determined that "[a] liquor license is not property in a constitutional sense.  It is a pure privilege to engage in a business that would otherwise be unlawful."  <u>See</u> <u>Holloway v. Schott</u>, 64 So. 2d 680, 681 (Fla. 1953); <u>but see</u> <u>Kline v. State Beverage Dep't</u>, 77 So. 2d 872, 874 (Fla. 1955) (suggesting that "a liquor license has come to have the quality of property" (quotation omitted)).  Municipal ordinances, which provide government entities with discretion to revoke an individual's liquor license, are not

12

unconstitutional insofar as they "serve[] the salutary purpose of protecting the public from the abuse of the laws governing the operation of establishments dispensing alcoholic beverages." Astral Liquors, Inc. v. State, Dept. of Bus. Reg., Div. of Alcoholic Beverages & Tobacco, 432 So. 2d 93, 96 (Fla. 3d DCA 1983); see also Brown v. State, Dept. of Bus. Reg., Div. of Alcoholic Beverages, 432 So. 2d 91, 93 (Fla. 4th DCA 1983) (explaining that the State "had discretion to deny a [liquor] license transfer and that the agency was not obliged to explain its reasons or the policy behind its actions in denying the transfer"). Because government permission to sell alcohol is not a recognized property right, a claim alleging that withdrawal of such permission is a "taking" is deficient on its face.

Nevertheless, even if the Town's permission to sell alcohol constituted a protected property interest, revocation of such permission would still not constitute a taking under the Penn Central analysis on the facts alleged here. Under the Penn Central framework, where an entity can still make a reasonable return on its investments, the economic impact of the regulation is not significant enough to warrant government compensation. See 438 U.S. at 135–38 (holding that because Penn Central could still make a "reasonable return" on its investments by maintaining the property in question as a railway station with office rentals and concessions, the economic impact of the zoning regulation on the property was negligible). In applying the Penn Central factors, the Eleventh Circuit has advised that, "[a] reduction in value alone will not constitute a taking." Dirt, Inc. v. Mobile Cnty. Comm'n, 739 F.2d 1562, 1566 (11th Cir. 1984). "[A]n otherwise valid exercise

of the police power is not a taking simply because the regulation deprives the owner of the most beneficial use of his or her property." Rymer v. Douglas Cnty., 764 F.2d 796, 801 (11th Cir. 1985).

Here, the presumed economic impact of the Town's regulation was approximately five years during which Persaud could not sell alcohol on the beach portion of the Grill. (Doc. 15 at ¶¶ 20–36.) Persaud, however, has not alleged either in its Third Amended Complaint or in its Response to the Town's Motion to Dismiss, what that economic impact entailed or what investment-backed interests were implicated. Instead, it is uncontested that throughout the five-year period in which Persaud was not permitted to sell alcohol on the beach, it retained the ability to sell alcohol in the Downtown-zoned portion of the Grill. Further, the regulation at issue applied only to alcohol sales and in no way impinged on Persaud's ability to make any other economic use of the beach portion of the property. Thus, despite the Town's revocation of its permission to sell alcohol on the beach portion of the Grill, Persaud could and did operate the Grill throughout the five-year period in question. Persaud, in sum, has not alleged facts showing that the economic impact of the Town's regulation, or its effect on Persaud's investment-baked expectations, was sufficiently burdensome to constitute a taking.

As for the remaining element of the Penn Central analysis, the Court need not analyze the character of the Town's actions to find whether Persaud stated a claim. The "Penn Central inquiry turns in large part, albeit not exclusively, upon the magnitude of a regulation's economic impact and the degree to which it

interferes with legitimate property interests."  <u>Lingle</u>, 544 U.S. at 539–540.  Accordingly, because Persaud has not shown that the Town's regulation substantially deprived it of all economically beneficial uses of its property, and because Persaud could still make a reasonable return on its investments, Persaud has not adequately alleged a valid takings claim under the United States or Florida Constitutions.  The takings claim is therefore due to be dismissed.

## II.  Persaud Has Failed to Allege Substantive Due Process Violations, but Persaud Has Sufficiently Alleged Procedural Due Process Violations.

Persaud also alleges that the Town's denial of its permission to sell alcohol on the entirety of its property constitutes a violation of substantive and procedural due process under the Florida Constitution.  (Doc. 15 at ¶¶ 56–58.)  Specifically, Persaud argues that the Town's conduct violated Article 1, Section 9 of the Florida Constitution, which guarantees due process.[4]  (<u>Id.</u> at ¶ 56.)  For the reasons outlined below, Persaud's due process claims are due to be dismissed.

---

[4] Persaud also brings its due process claims under Article X, Section 6(a) of the Florida Constitution, which deals with just compensation, (Doc. 15 at ¶ 56), but this inappropriately conflates the two sections of the Constitution.  As one Florida jurist has explained:

> Despite the similarity between these theories, it is clear that "just compensation" and "deprivation of property without due process" are separate and distinct constitutional theories.  Both involve "takings" and "police power," but the analysis of these concepts under a just compensation theory is different from the analysis under a due process theory.  Thus, it is critical that a just compensation "taking" not be confused with a "taking" without due process.

<u>Tampa-Hillsborough Cnty. Expressway Auth. v. A.G.W.S. Corp.</u>, 608 So. 2d 52, 55–56 (Fla. 2d DCA 1992) (Altenbernd, J., dissenting) (citations omitted).

### A. Persaud Has Not Adequately Alleged that He Was Denied Substantive Due Process.

The Florida Supreme Court has instructed that "[s]ubstantive due process protects fundamental rights that are so 'implicit in the concept of ordered liberty' that 'neither liberty nor justice would exist if they were sacrificed.'" Jackson v. State, 191 So. 3d 423, 428 (Fla. 2016) (quoting Palko v. Connecticut, 302 U.S. 319, 325–26 (1937)). "Substantive due process analysis must begin with a careful description of the asserted right, for [t]he doctrine of judicial self-restraint requires [courts] to exercise the utmost care whenever [they] are asked to break new ground in this field." Reno v. Flores, 507 U.S. 292, 302 (1993) (quotation omitted). "A fundamental right is one which has its source in and is explicitly guaranteed by the federal or Florida Constitution." State v. J.P., 907 So. 2d 1101, 1109 (Fla. 2004).

The right to sell alcohol on one's property is created by local law and is not a fundamental, enumerated right under the Florida Constitution. See Fla. Const. art. VIII, § 5(a) (rules regarding "the sale of intoxicating liquors, wines or beers shall be preserved to each county"). While the Florida Supreme Court has extended substantive due process protection to certain unenumerated rights, it has not yet extended such protection to rights in non-conforming uses of one's property. See State ex. rel. First Presbyterian Church of Miami v. Fuller, 183 So. 726, 727 (Fla. 1938) (holding that when a person engages in the sale of liquor, "[h]e cannot assert that because of an established liquor business he has a vested right over which the Legislature is powerless to enact laws regulating or prohibiting the same"). As one Florida court has held, permission from the government to sell

16

liquor "is not a vested right, and it can be subjected to further regulation or even revocation at the pleasure of the legislature." Davidson v. City of Coral Gables, 119 So. 2d 704, 709 (Fla. 3d DCA 1960).[5] The court in Davidson continued, "Whether any license shall be granted, and what licenses shall be granted are legislative questions and subject at all times to the control of the legislature. A liquor license, even when granted, is not a property right. It is only a privilege. It may be taken away by the governing authorities without compensation to the holder." Id. at 711.

The Florida Supreme Court has not opined on whether a liquor license is a fundamental right. And this Court will not write state law and find that the facts alleged by Persaud implicate a fundamental right. Hynes v. Pasco Cnty., 801 F.2d 1269, 1270 (11th Cir. 1986) ("The federal courts will not sit as a zoning review board. Challenges to the county's action are the province of the state courts."). Accordingly, Persaud has not alleged a plausible substantive due process violation claim.

---

[5] Florida courts are not alone. Other states have also determined that the right to sell alcoholic beverages on one's property is not a fundamental right. See, e.g., Duncan v. Marcin, 403 N.E.2d 653, 656 (Ill. App. Ct. 1980) ("Licenses to sell liquor are not contracts and create no vested rights . . . . a license to sell alcoholic beverages at retail is not a right but a privilege, and as such is not subject to the protection of due process under the constitution" (quotation omitted)); Long v. Liquor Control Comm'n, 910 N.W.2d 674, 681 (Mich. Ct. App. 2017) (holding that a liquor license does not confer a property interest in itself or in potential future profits); SP Star Enters., Inc. v. City of Los Angeles, 93 Cal. Rptr. 3d 152, 156 (Cal. Ct. App. 2009) (explaining that the right to sell alcohol is "not a protected activity and does not involve a fundamental vested right"); see also State v. Saugen, 169 N.W.2d 37, 47 (Minn. 1969) (Peterson, J., dissenting) ("There is no vested right to [o]r under a liquor license. There is at most a privilege . . . to do what otherwise would be, or could be made, an offense, and which is subject to changing regulations, and even to legislative cancellation." (quotation omitted)).

### B. Persaud Has Adequately Stated a Claim That He Was Denied Procedural Due Process.

The due process clause of the Florida Constitution provides, "No person shall be deprived of life, liberty or property without due process of law." Fla. Const. art. I, § 9. "Procedural due process imposes constraints on governmental decisions that deprive individuals of liberty or property interests." Massey v. Charlotte Cnty., 842 So. 2d 142, 146 (Fla. 2d DCA 2003). It "requires that each litigant be given proper notice and a full and fair opportunity to be heard." Carmona v. Wal-Mart Stores, E., LP, 81 So. 3d 461, 463 (Fla. 2d DCA 2011). The notice must convey the requisite information to the parties affected, and it must afford the parties an appropriate amount of time to make their appearance. See De Leon v. Collazo, 178 So. 3d 906, 908 (Fla. 3d DCA 2015).

To that end, as Persaud notes in its pleading, section 34-1264(i)(2) of the Town's Code of Ordinances provides, "Prior to revoking an administrative approval, special exception, or other approval for alcoholic beverages, the town council shall conduct a public hearing at which the permit holder may appear and present evidence and testimony concerning the proposed revocation." Fort Myers Beach, Fla., Code § 34-1264(i)(2) (2015). The ordinance further states, "The permit holder shall be notified of the grounds upon which revocation is sought prior to any hearing, and shall be given notice of the time and place of the hearing in the same manner." Id. Section 34-1264(i)(2) guarantees the "proper notice" and "opportunity to be heard" required for procedural due process under the Florida law by giving those facing revocation of their permission to sell liquor the chance to defend their

18

interests at a public hearing of which they are made aware.  See Carmona, 81 So. 3d at 463; see also Kline, 77 So. 2d at 874 ("[B]efore revoking one's liquor license the holder is entitled to notice and an opportunity to be heard . . . .  Such procedure is more in accord with due process.").

Here, based on the operative complaint before this Court, the elements of a procedural due process claim have been adequately alleged.  The state court has granted Persaud "[a]n order declaring that the Town wrongfully refused to grant zoning approval in contravention of its Land Development Code and failed to follow the procedures mandated in the Land Development Code prior to revoking Persaud's grandfathered use."  (Doc. 1-4 at ¶ 60(d); Doc. 1-6 at 235, 248.)  Because the state court's ruling remains in effect in this Court, the factual findings set forth by the state court's declaratory judgment cannot be further litigated.  See 28 U.S.C. § 1450.  Further, under federal issue-preclusion principles, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."  Montana v. United States, 440 U.S. 147, 146–48 (1979).

That standard for issue preclusion is met here.  The facts in Persaud's state court case and Persaud's federal case are identical; the issue of the Town's procedures for depriving Persaud of its permission to sell alcohol has already been litigated; determinations as to the appropriateness of the Town's conduct in its deprivation of Persaud's liquor license was a necessary part of the state judgment

insofar as it was an issue upon which Persaud sought declaratory relief; and the Town had a full and fair opportunity to litigate the issue in the state court proceeding.  See I.A. Durbin, Inc. v. Jefferson Nat'l Bank, 793 F.2d 1541, 1549 (11th Cir. 1986).

By entering declaratory judgment in favor of Persaud on remand from the Second DCA, the factual issue of whether the Town violated its own procedures when it revoked Persaud's permission to sell alcohol is therefore settled.  Empire Fire & Marine Ins. Co. v. J. Transp., Inc., 880 F.2d 1291, 1297 (11th Cir. 1989). And because the Town's own procedures require proper notice and the opportunity to be heard for those in danger of losing their permission to serve alcohol, the facts necessary to state a procedural due process claim under Florida law have been sufficiently alleged.  Accordingly, as pleaded, Persaud sets forth a prima facie procedural due process violation, and thus Persaud's procedural due process claim survives the motion to dismiss stage and may, at least for now, proceed.

## III.   Persaud Has Not Sufficiently Alleged That It Is Entitled to Declaratory Relief.

Finally, Persaud seeks declaratory relief from the Court with respect to several alleged controversies.  (Doc. 15 at ¶¶ 48–51.)  Again, Persaud has already received declaratory relief from the Second DCA.  Because declaratory relief is generally inappropriate where, as here, the controversy alleged has already been adjudicated by the Florida courts, the Court declines to exercise its discretion and grant Persaud declaratory relief on any of the issues it raises.

It is axiomatic that the Declaratory Judgment Act authorizes a district court to grant declaratory relief, but such a determination is discretionary.  See 28 U.S.C. § 2201(a) (courts "may declare the rights and other legal relations of any interested party seeking such declaration whether or not further relief is or could be sought"); Hollis v. Itawamba County Loans, 657 F.2d 746, 750 (5th Cir. 1981) ("Of course, whether to grant declaratory relief is a matter for the court's sound discretion.").

In its First Amended Complaint filed in state court, Persaud included a count requesting declaratory relief on four issues.  (Doc. 1-4 at 179.).  Specifically, Persaud sought an order declaring that: (1) that Town "sign off" on its "application that permits the sale of alcohol on the Beach consistent with the 1974 COP License and Town approval issued in 2014"; (2) a continuing right to sell alcohol on the Beach as a nonconforming use exists; (3) it never abandoned its right to continue to serve alcohol on the Beach; and (4) the "Town wrongfully refused to grant zoning approval in contravention of its Land Development Code and failed to follow the procedures mandated in the Land Development Code prior to revoking Persaud's grandfathered use."  (Id.)

After the Second DCA found for Persaud and remanded to the state trial court for entry of judgment in favor of Persaud on the declaratory relief count, Persaud, 310 So. 3d at 499, the trial court entered an order granting the entirety of the relief sought in Count One—the declaratory relief count.  In other words, Persaud, by operation of law, received all relief he sought in the declaratory relief count set forth in his First Amended Complaint.

Now, in Persaud's Third Amended Complaint, it again seeks declaratory relief on those same four issues as well as five other issues. Given the state court's holding, the Court will not exercise its discretion and enter declaratory relief on those four issues on which Persaud has already been granted relief, namely those outlined in Doc. 15, ¶¶ 51(a), 51(b), 51(e), and 51(f). See Parklane Hosiery Co., Inc. v. Shore 439 U.S. 322, 337 (1979) (explaining that once an issue has been resolved in a prior proceeding, the court has no further factfinding to perform and the moving party is foreclosed from relitigating those issues).

The only remaining issues on which Persaud seeks declaratory relief in its Third Amended Complaint are: (1) that the Town's conduct constituted a taking without just compensation (Doc. 15 at ¶¶ 51(c),(d)); (2) that the Town violated Persaud's substantive and procedural due process rights under the Florida Constitution and the U.S. Constitution[6] (id.); (3) that Persaud is entitled to damages against the Town for violation of Persaud's federal and state constitutional rights (id. at ¶ 51(g)); and (4) that Persaud is entitled to an order awarding reasonable attorney's fees, costs, and prejudgment interest (id. at ¶ 51(h)).

The Court has already determined that Persaud has failed to plausibly allege a takings claim under the United States or Florida Constitutions or a violation of its substantive due process rights under the Florida Constitution. And Persaud's Third

---

[6] Confusingly, though Persaud is asking for declaratory relief for violation of his procedural and substantive due process rights under both the United States and Florida Constitutions, he only pleads a violation of his procedural and substantive due process rights under the Florida Constitution.

Amended Complaint does not allege a violation of substantive or procedural due process under the United States Constitution.  (Doc. 15 at 12.)  Accordingly, because Persaud has not alleged sufficient facts to state a claim on these issues, the Court declines to exercise its discretion and grant Persaud declaratory relief on them.  The Court further declines to declare that Persaud is entitled to damages against the Town for violations of Persaud's federal or state constitutional rights.

While Persaud has adequately alleged the elements of a procedural due process violation under Florida law, as outlined above, the portion of Persaud's declaratory relief count dealing with this issue is nested within a count requesting declaratory relief on a takings claim and, as best the Court can glean, a violation of substantive due process under the Florida Constitution.  This mixing of issues is inappropriate and misleading as just compensation and due process "are separate and distinct constitutional theories."  Tampa-Hillsborough Cnty. Expressway Auth., 608 So. 2d at 55–56.  Because "[d]eclaratory relief is purely discretionary, and courts have the power to dismiss a claim for declaratory relief where it is duplicative of claims asserted in a lawsuit," the Court will not grant Persaud declaratory relief on this matter either.  Roy v. City of Monroe, No. 16-1018, 2018 U.S. Dist. LEXIS 147777, at *20–21 (W.D. La. Aug. 29, 2018).

Further, even if Persaud had properly stated a request for declaratory relief on the Florida procedural due process claim, the Court declines to exercise its discretion and do so.  As the Eleventh Circuit has made clear, "a court cannot grant declaratory relief when there is no 'immediate and definite governmental action or

policy that has adversely affected and continues to affect a present interest.'"

<u>Carver Middle Sch. Gay-Straight Alliance v. Sch. Bd. of Lake Cnty., Fla.</u>, 842 F.3d

1324, 1330 (11th Cir. 2016).  As pleaded, Persaud has no present interest in

declaratory relief because the violation alleged has long since been remedied by the

Florida state courts.  Because an interest in vindication alone cannot support a

declaratory judgment, the Court declines to exercise its discretion and thus

dismisses Persaud's claim for declaratory relief on this issue.

In closing, having carefully reviewed the extensive litigation history between

these parties in both the state and federal courts, the Court notes that it is likely

that the parties have expended extensive resources pursuing their respective

interests.  With this in mind, the Court strongly encourages the parties to consider

settlement discussions before continuing with further litigation in this Court.  The

Court is, of course, not requiring the parties to do so, at least at this point.  But the

Court suggests that this may be time well spent prior to filing any amended

complaint.

<u>**CONCLUSION**</u>

For the reasons above, it is **ORDERED**:

1.  The Town's motion to dismiss (Doc. 22) is **GRANTED IN PART AND
    DENIED IN PART**.

2.  The Third Amended Complaint (Doc. 15) is **DISMISSED without
    prejudice**.

24

3.      Plaintiff Persaud, LLC will be granted leave to amend its Third

Amended Complaint consistent with this Order, should Persaud choose

to move forward with further litigation.  Any amended complaint is due

to this Court on or before April 15, 2022.  And should the parties choose

to enter into voluntary settlement negotiations for a specified period of

time, the Court will entertain a joint motion to stay all current

deadlines during those negotiations.

**ORDERED** in Fort Myers, Florida, on March 25, 2022.

**JOHN L. BADALAMENTI**
UNITED STATES DISTRICT JUDGE