UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PERSAUD PROPERTIES FL
INVESTMENTS, LLC,

       Plaintiff,

v.                               Case No:  2:21-cv-384-JLB-NPM

TOWN OF FORT MYERS BEACH,
FLORIDA, and ROGER
HERNSTADT,

       Defendants.

_____

## **ORDER**

Plaintiff Persaud Properties FL Investments, LLC ("Persaud") has sued the Town of Fort Myers Beach Florida (the "Town") and the Town Manager, Roger Hernstadt ("Mr. Hernstadt", and together with the Town, "Defendants") for myriad due process and equal protection violations stemming from the Town's regulation of Persaud's use of its commercial property, the Sunset Beach Tropical Grill ("Tropical Grill"). The Town and Mr. Hernstadt have moved to dismiss Persaud's operative complaint, and Persaud has responded. (Doc. 37; Doc. 40). After carefully reviewing the record, the Court **GRANTS** Defendants' Motion to Dismiss and dismisses Plaintiffs' Fourth Amended Complaint (Doc. 36) with prejudice.

## BACKGROUND[1]

The Tropical Grill is a beachfront restaurant in the Town of Fort Myers Beach.  (Doc. 36 at ¶¶ 7–8).  In 1974, the owners of the Tropical Grill received zoning approval to serve alcohol on the property, including the beachfront portion of the Tropical Grill, which stretched to the shoreline of the Gulf of Mexico.  (*Id.* at ¶ 8.)  The owners thereafter obtained a Florida state license issued by the Division of Alcoholic Beverages and Tobacco ("DABT"), permitting the service of alcohol on the property, including the beach portion.  (*Id.* at ¶ 9).  In 1984, the Tropical Grill was sold to a new owner, and included in that sale was the state alcohol license and its attendant zoning approval to serve alcohol on the entirety of the Tropical Grill.  (*Id.* at ¶ 10).

In 1995, the Town was incorporated, and with its incorporation came the enactment of various zoning regulations impacting the sale of alcohol on the land on which the Tropical Grill sits.  (*Id.* at ¶ 11).  The new zoning regulations effectively split the Tropical Grill into two parts.  While the part of the property zoned in the "Downtown" area received approval to serve alcohol, the beach area of the property, zoned "Environmentally Critical," did not.  (*Id.* at ¶¶ 11–12).  A portion of the Town's zoning regulations established that zoning approval to serve alcohol runs with the land.  (*Id.* at ¶ 11(c)(1)).  Thus, upon the sale of a property, the Tropical

---

[1] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citation omitted).  Accordingly, this background section relies on the facts recited in the Fourth Amended Complaint.  (Doc. 36).

Grill retained its permission to serve alcohol on the entirety of the property.  (*Id.*)

In 2012, the Town adopted Ordinance No. 12-03, which allowed current property owners in possession of "prior state alcohol licenses and zoning approval to serve alcohol on the beach" the option of having their property "grandfathered" in as a "non-conforming use."  (*Id.* at ¶ 13).  The Town's Ordinance also prescribed that "[n]onconforming uses may continue until there is an abandonment [of the permitted location] for a continuous nine-month period."  (*Id.* at ¶ 11(c)(2)).  The owners of the Tropical Grill elected to maintain their rights from the 1974 zoning approval and state license and continued to serve alcohol on the beach.  (*Id.* at ¶ 14).

Two years later, on July 31, 2014, Persaud purchased the Tropical Grill in a sale which included the state liquor license and the grandfathered 1974 approval to serve alcohol on the entire property, including the beach.  (*Id.* at ¶ 17).  Three months after purchase, Persaud began extensive renovations on the property.  (*Id.* at ¶ 18).  Persaud requested that the DABT temporarily suspend its liquor license while the renovations were ongoing.  (*Id.*)  The DABT granted Persaud's request and placed its liquor license in inactive status.  (*Id.*)  But a four-month renovation plan stretched to more than nine months of work due, at least in part, to the Town's issuance of multiple stop-work orders, "which resulted in the increased time required for completion of the renovations."  (*Id.* at ¶¶ 19-21).

Persaud completed its extensive renovations to the Tropical Grill property approximately a year later.  (*Id.* at ¶ 21).  But Persaud had to obtain the Town's

approval to reinstate the liquor license and begin selling alcohol.  (*Id.* at ¶ 22).  The Town, however, would not permit Persaud to resume the Tropical Grill's liquor sales unless Persaud limited such sales to the areas of the property zoned "Downtown."  (*Id.* at ¶ 23).  Pointing to an ordinance that deemed any nonconforming liquor license "abandoned" if the property did not sell alcohol for nine months, the Town deemed Persaud's grandfathered liquor license abandoned.  (*Id.* at ¶¶ 11(c)(2), 23).  Despite the Town's prohibition on the sale of liquor on the beach portion of the Tropical Grill, Persaud pushed forward to re-open the Tropical Grill and applied for a state license limiting its sale of alcohol to the Downtown zoned area of the property.  (*Id.* at ¶ 27).  The license was activated on October 22, 2015.  (*Id.* at ¶ 28).  But the story does not end there.

On March 28, 2017, Persaud sued the Town in state court.  (Doc. 1-4 at 3.) The Town removed the case to federal court, but the federal court remanded the case back to state court because Persaud had not exhausted its state law remedies. *See Persaud Props. FL Invs., LLC v. Town of Fort Myers Beach*, No. 2:17-cv-227-FTM-99CM, 2017 WL 4868908, at *3 (M.D. Fla. Oct. 26, 2017).  Subsequently, Persaud filed an Amended Complaint, consisting solely of state law issues, in state court.  (Doc. 1-4 at 171).

The state trial court entered a judgment finding that the Town had properly determined that Persaud had abandoned the nonconforming use of the property. (Doc. 1-6 at 145).  Persaud appealed, however, and in a well-reasoned opinion authored by Judge Anthony Black, the Florida Second District Court of Appeal

4

reversed and remanded, holding that Persaud is "entitled, under the applicable provisions of the Town's municipal code, to maintain the property's status as a grandfathered nonconforming use." (*Id.* at 234–35). The Second District Court of Appeal reasoned that the plain language of the Town's ordinance requires a showing that Persaud *intended to abandon* its nonconforming use of the property—the sale of alcohol at the Tropical Grill—"with the intent that the cessation of such use be permanent." (*Id.* at 234). And because there was no dispute that Persaud did not intend to abandon its nonconforming use permit, the trial court's entry of summary judgment in favor of the Town was in error as a matter of law. (*Id.* at 234). The Second District Court of Appeal therefore vacated the trial court's denial of Persaud's declaratory relief count and remanded to the trial court for entry of an order granting Persaud judgment on its declaratory relief count. (*Id.* at 235). Then, on February 26, 2021, the state trial court issued an order granting declaratory relief to Persaud, and Persaud's permission to sell liquor on the beach portion of its property was restored. (*Id.* at 246).

Persaud alleges that just after it filed suit against the Town in state court, "the Town launched a malicious, retaliatory, and orchestrated campaign" at the direction of Town Manager, Mr. Hernstadt. (Doc. 36 at ¶ 37). Specifically, the Town cited Persaud for numerous property violations related to signs, beach chairs, and parking lots, levied hundreds of thousands of dollars' worth of fines against Persaud, and placed liens on Persaud's property. (*Id.* at ¶¶ 38–39, 42). The conflicts between Persaud and the Town over the signs and parking spaces took

5

similar form to Persaud's dispute with the Town over the liquor license. Namely, Persaud had been renting parking spaces to the general public and placing instructional signs on his property pursuant to zoning variances that, Persaud alleges, have not been honored by the Town. (*Id.* at ¶¶ 43–46). Further, Persaud has applied for permits consistent with the variances, but the Town has either denied its applications or granted it "special exceptions" that Persaud alleges placed unreasonable and unduly burdensome restrictions on the use. (*Id.*) Finally, Persaud rented beach chairs to the public believing that its license to the premises entitled it to rent the chairs, but the Town fined Persaud for such rentals and continues to fine Persaud even though Persaud has since abated any chair rental violations. (*Id.* at ¶¶ 47–48.)

Although there is no dispute between the parties that the nonconforming use permitting the sale of alcohol on the beach portion of the Tropical Grill was restored upon entry of the trial court's final judgment granting the declaratory relief requested by Persaud, and at no time was it <u>completely deprived</u> of the ability to sell alcohol at the Tropical Grill property, Persaud nevertheless continued with its litigation. (Doc. 22 at ¶¶ 4–5).

On April 16, 2021, Persaud filed a Second Amended Complaint in state court, seeking declaratory, injunctive, and monetary relief for the Town's refusal to restore its liquor license for the beach portion of the property upon the Tropical Grill's reopening after its renovations in 2015. (Doc. 3). The Town moved to dismiss and simultaneously removed the case to this Court. (Doc. 4).

6

Persaud then filed a Third Amended Complaint in this Court, seeking declaratory relief and damages against the Town under the Takings and Due Process Clauses of the United States and Florida Constitutions.  (Doc. 15).  The Town subsequently filed a Motion to Dismiss.  (Doc. 22).  The Court granted the Town's Motion to Dismiss and allowed Persaud leave to amend.  (Doc. 35). Persaud's Fourth Amended Complaint is the operative complaint here.  (*See* Doc. 36).

## LEGAL STANDARD

Defendants have moved to dismiss Persaud's Fourth Amended Complaint with prejudice.  (Doc. 37 at 1).  The Court presumes, based on Defendants' pleadings, that Defendants seek to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), although Defendants have not explicitly cited that rule. Rule 12(b)(6) provides a defense to a claim for relief based on the moving party's failure to state a claim.  *See* Fed. R. Civ. P. 12(b)(6).

When considering a Motion to Dismiss under Rule 12(b)(6), the Court must accept all of the allegations set forth in the Complaint as true and draw all reasonable inferences in the light most favorable to the Plaintiff.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).  Still, a Complaint offering mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient.  *Ashcroft v. Iqbal*, 556 U.S.  662, 678 (2009) (quotation omitted). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset Mgmt., Ltd. v.*

7

*Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).  Put in the affirmative, a complaint

must "contain sufficient factual matter, accepted as true, to state a claim to relief

that is plausible on its face," and the plaintiff must plead "factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Iqbal*, 556 U.S. at 678 (quotation marks and citations

omitted).

Even if the likelihood of the Plaintiff's recovery appears minimal, a complaint

may nevertheless survive a Motion to Dismiss under Rule 12(b)(6), so long as the

Plaintiff alleges sufficient facts such that it is reasonable to expect that discovery

will lead to evidence supporting the claim.  *Twombly*, 550 U.S. at 556; *Iqbal*, 556

U.S. at 678.  At bottom, a motion to dismiss for failure to state a claim merely tests

the sufficiency of the complaint, and it does not decide the merits of the case.

*Milburn v. U.S.*, 734 F.2d 762, 765 (11th Cir. 1984).

## DISCUSSION

Persaud brings two claims against each of the Defendants.  Against the

Town, Persaud first brings a claim for due process violations under the United

States and Florida Constitutions.  (Doc. 36 at ¶¶ 51–57).  Persaud also brings a

claim alleging that the Town violated his rights under the Equal Protection Clause

of the Fourteenth Amendment to the United States Constitution.  (*Id.* at ¶¶ 58–78).

Against Mr. Hernstadt, Persaud brings a claim for due process violations under

Article I, Section 9 and Article X, Section 6(a) of the Florida Constitution as well as

a claim for violations of the Equal Protection Clause of the Fourteenth Amendment

to the United States Constitution.  (*Id.* at ¶¶ 79–106.)

I.   **Persaud's claims for due process violations under the United States and Florida Constitutions (Counts I and III) are due to be dismissed.**

Persaud brings claims of due process violations under the United States and Florida Constitutions against the Town, as well as claims of due process violations under the Florida Constitution against Mr. Hernstadt.  The basic due process guarantee of the Florida and United States Constitutions is that no person shall be deprived of life, liberty, or property by the government without due process of law.  U.S. Const., amend. XIV, § 1; Fla. Const. art. I, § 9.  Because of the significant similarities between the due process clauses of the United States and Florida Constitutions, they can be analyzed together.  *See Dep't of Law Enforcement v. Real Prop.*, 588 So. 2d 957, 960 (Fla. 1991) (explaining that under both the Florida Constitution and the United States Constitution, "procedural due process serves as a vehicle to ensure fair treatment through the proper administration of justice where substantive rights are at issue") (citing *State ex rel. Gore v. Chillingworth*, 126 Fla. 645, 657–58 (1936) and *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  The Due Process Clause requires "that a deprivation of life, liberty or property be preceded by notice and opportunity for hearing appropriate to the nature of the case."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quotation mark

9

omitted).  "The government must provide the required notice and opportunity for a hearing at a meaningful time and in a meaningful manner, although the notice and hearing may be postponed until after the deprivation has occurred."  *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011) (quotation mark and citation omitted).

A procedural due process claim requires a plaintiff to prove a deprivation of a constitutionally protected interest, state action, and constitutionally inadequate process.  *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).  Due process "is a flexible concept that varies with the particular circumstances of each case."  *Id.* Courts must account for three distinct factors in identifying "the specific dictates of due process."  *Mathews*, 424 U.S. at 335.  These are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value . . . of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Id.* (citation omitted).

Here, Persaud alleges that its private interest was its "right to use its State License for the sale of alcohol at the Property for the entire Property under the non-conforming use provisions of the Land Development Code."  (Doc. 36 at ¶52.) Persaud alleges that the Town deprived it of this right and "failed to follow the procedures mandated in [the Town's Development] Code prior to revoking Persaud's grandfathered use," and Mr. Hernstadt "limit[ed] Persaud's use of its State License

10

at the Property and depriv[ed] Persaud of its right to the full use of its State License

at the Property." (*Id.* at ¶¶ 56, 81.)  Following the analyses outlined in *Grayden* and

*Mathews*, the Court must first determine whether Persaud's liquor license

constitutes a property interest.

### A. There is no indication that administrative approval to sell alcohol via a non-conforming use is a constitutionally cognizable property interest.

As the Eleventh Circuit has instructed, "[p]roperty interests subject to

procedural due process protection are not limited by a few rigid, technical forms.

Rather, property denotes a broad range of interests that are secured by existing

rules or understandings." *Barnes v. Zaccari*, 669 F.3d 1295, 1303 (11th Cir. 2012)

(citation omitted).  The Constitution does not enumerate particular property

interests; instead, such property interests are created or recognized by "independent

source[s] such as state law." *Town of Castle Rock v. Gonzalez*, 545 U.S. 748, 756

(2005) (citations omitted).

Here, the Municipal Code of the Town of Fort Myers Beach provides that

"[t]he sale or service of alcoholic beverages for consumption on the premises shall

not be permitted until such location has been approved by the town."  Fort Myers

Beach, Fla., Code § 34-1264(a) (2022).  "The director may administratively approve

the sale or service of alcoholic beverages for consumption on the premises" when

certain circumstances are present. *Id.* at § 34-1264(a)(1).  But "[w]hen

circumstances so warrant the director may determine that administrative approval

is not the appropriate action and that the applicant must instead apply for approval

as a special exception." *Id.*

Persaud has not directed the Court towards any case law supporting its argument that administrative approval of the sale or service of alcoholic beverages for consumption on the *entirety* of its premises is a property right or interest under Florida law.  The Court cannot find support for this contention either.  As the Court indicated in its earlier Order, government permission to sell alcohol is generally not a recognized property right.  (*See* Doc. 35 at 12–13.)  The Supreme Court of Florida has determined that "[a] liquor license is not property in a constitutional sense.  It is a pure privilege to engage in a business that would otherwise be unlawful." *Holloway v. Schott*, 64 So. 2d 680, 681 (Fla. 1953); *see also U.S. v. McGurn*, 596 So. 2d 1038, 1041 (Fla. 1992) ("We emphasize that a liquor license is not like other 'general intangibles' because it is issued as a matter of privilege, not as a matter of right, by the government, and the government has total control of its use"); *see also Walling Enterprises, Inc. v. Mathias*, 636 So. 2d 1294, 1296–97 (Fla. 1994) ("This Court has specifically determined that a liquor license is not property in a constitutional sense") (quotation omitted).  And while it is true that older Florida caselaw has recognized certain property rights in liquor licenses in the commercial context, *see Kline v. State Beverage Dep't*, 77 So. 2d 872, 874 (Fla. 1955) (suggesting that "a liquor license has come to have the quality of property"), Florida courts have taken care to distinguish the commercial context from the constitutional.  *See Yarbrough v. Villeneuve*, 160 So. 3d 747, 747–48 (Fla. 1st DCA 1964) (holding that while a liquor license has been recognized as property "in the commercial sense," a

12

liquor license "under the laws of this state is but the grant of a privilege which confers no vested rights in the licensee and as such is not property in the constitutional sense"); *see also Walling*, 636 So. 2d at 1297 (noting that while a liquor license possesses the "quality of property," merely having property-like attributes does not mean that a liquor license can be treated like property in all circumstances and holding that a liquor license could not be considered property for purposes of a landlord's possessory lien"). In sum, the Court cannot find, nor has it been directed to, a single Florida case stating that a liquor license constitutes a constitutionally cognizable property right.[2]

Finally, in *Lexra, Inc. v. City of Deerfield Beach, Fla.*, the Eleventh Circuit, applying *Walling*, held that "a bar's license to sell alcohol is not a property interest in Florida for the purposes of a constitutional claim." 593 F. Appx. 860, 864 (11th Cir. 2014). In *Lexra*, several bars brought suit against the City of Deerfield Beach after they became subject to a local municipal ordinance, which prevented the sale of liquor past 2 a.m. *Id.* at 861. The bars, which had formerly been able to serve

---

[2] It is also worth noting that Florida courts have held in all sorts of contexts that administrative approval to conduct some privileged activity is not a protected property interest. *See Lite v. State*, 617 So.2d 1058, 1060 (Fla. 1993) (explaining in the context of driver's licenses that "there is no property interest in possessing a driver's license. Rather, driving is a privilege and can be taken away or encumbered as a means of meeting a legitimate legislative goal"); *Sickon v. Sch. Bd. of Alachua Cnty., Fla.*, 719 So.2d 360, 366 n.9 (11th Cir. 1998) (holding that a school board did not deprive a band teacher of any right to property when the principal did not renew the teacher as the band director—a title she had held in the previous academic year); *Reserve, Ltd. v. Twn. of Longboat Key*, 933 F.Supp. 1040, 1043–44 (M.D. Fla. 1996) (holding that the purported property interest—a building permit that had been revoked—was "created by state law and falls comfortably short of a fundamental right").

alcoholic beverages until 4 a.m., asserted that the local ordinance was a violation of their Fourteenth Amendment procedural due process rights because it had deprived them of the full use of their liquor licenses without notice. *Id.* Holding that because the bar owners had not asserted a protected property interest which could be deprived by the city, the Eleventh Circuit found that "Florida law does not provide a basis for Appellants' due-process theory." *Id.* at 864. That is, because Florida law does not support constitutionally protected property rights in a liquor license, a procedural due process claim based on the deprivation of such alleged property interests fails as a matter of law. *See id.* (holding the district court did not err in dismissing such a claim).

A recent case from Florida's Second District Court of Appeal is particularly instructive. In *Gulf Coast Trans., Inc. v. Hillsborough Cnty.*, a taxi company was given property rights in its taxi medallion under special legislation authored by the Hillsborough County in 2012, but in 2017, the County enacted a new regulation scheme for the taxi business which "did not recognize or grandfather in medallions issued by the PTC." 352 So. 3d 368, 373 (Fla. 2d DCA 2022). Owners of the taxi medallions challenged the new regulations arguing that they had rendered their taxi medallions worthless and thereby constituted a deprivation of a constitutionally protected property interest. *Id.* The court held that the taxi drivers did not have a property interest in the medallions because the "property interest in the medallions did not exist prior to the regulation of the taxicab industry; rather the 2012 special legislation created an interest that would not

14

otherwise exist without it." *Id.* at 381. Recognizing that to determine whether a person has a property interest for purposes of the Due Process Clause, courts must "look behind labels," the Second District Court of Appeal found that even though the legislature had declared the medallions to be personal property, that did not make the medallions cognizable, constitutionally-protected property interests. *Id.* at 375 (citation omitted). "Government regulation involves the adjustment of rights for the public good which often curtails some potential for the use or economic exploitation of private property," the Court held. *Id.* at 377 (quoting *Andrus v. Allard*, 444 U.S. 51, 65 (1979)).

Here, Persaud's liquor license was administratively approved as a result of a regulatory scheme put in place in 2012, when the Town adopted an ordinance providing that "current property owners holding prior state alcohol licenses and zoning approval . . . to comply with the [Town]'s new regulations or be grandfathered as a non-conforming use." (Doc. 36 at ¶ 13). Beginning in 2014, Persaud suspended its liquor license for over a year, and in 2015, when it sought the Town's approval to reinstate its liquor license, the Town refused to grant permission to sell alcohol on the beach portion of its property. (*Id.* at ¶¶ 18, 23). But administrative approval to sell alcohol on the beach portion of Persaud's property is not a protected property interest under Florida law. Like the owners of the taxi medallions in *Gulf Coast Trans.*, Persaud had a license or privilege created by a regulatory scheme, but it did not have a constitutionally cognizable right to that license. Without legal authority supporting the notion that administrative

15

approval for liquor license is a property interest, the Court cannot find that deprivation of non-conforming use permit violates the due process clause of either the Florida Constitution or the United States Constitution.

**B. Even if administrative approval to sell alcohol via a non-conforming use constitutes a property interest, Persaud has failed to state a cognizable claim that it was deprived of procedural due process.**

Even if a non-conforming use is a protected property interest, there is no indication that Persaud was denied due process. Section 34-1264(i) of the Town of Fort Myers Beach's Code provides that the town council has the authority to revoke an alcoholic beverage special exception on a number of different grounds. Further,

> [P]rior to revoking an administrative approval, special exception, or other approval for alcoholic beverages, the town council shall conduct a public hearing at which the permit holder may appear and present evidence and testimony concerning the proposed revocation. At the hearing, the town council may revoke the permit if a violation described in this subsection is established by a preponderance of the evidence. The permit holder shall be notified of the grounds upon which revocation is sought prior to any hearing, and shall be given notice of the time and place of the hearing in the same manner as set forth in article II of this chapter.

Section 34-1264(i)(2). After Persaud suspended its liquor license for more than a year to finish construction on its property, Persaud requested that the Town reinstate its liquor license. (Doc. 36 at ¶ 21). The Town refused to do so unless Persaud agreed to limit the sale of alcohol to the portion of its property zoned in the Downtown area. (*Id.* at ¶ 23.) Persaud argues that it did not receive fair notice or an adequate opportunity to be heard as to the Town's decision. (*Id.* at ¶¶ 25–26.) It filed suit in state court, and on appeal, Persaud was granted declaratory judgement

16

that it was entitled to maintain the property's status as a grandfathered nonconforming use.  (*Id.* at ¶¶ 32–34.)  It is difficult to discern how this resulted in a lack of due process for Persaud.  *See Dibbs v. Hillsborough Cnty.*, 67 F. Supp. 3d 1340, 1354 (M.D. Fla. 2014) ("The existence of a state judicial procedure to review, remand, and/or set aside agency decisions, . . . and to [o]rder such ancillary relief as the court finds necessary . . . is sufficient to redress [the plaintiff] for the deprivation alleged and is sufficient to satisfy the Fourteenth Amendment's Due Process Clause.") (citation omitted).

As the Eleventh Circuit held in *McKinney*, "the appropriate forum for addressing [plaintiff]'s claim is . . . Florida state court possessing the ability to remedy the alleged procedural defect."  20 F.3d at 1561.  In fact, where, as here, a party is entitled as a matter of right to seek review in state court, the state court "*must* determine whether procedural due process is accorded . . . [and] whether the administrative findings and judgment are supported by competent substantial evidence."  *City of Deerfield Beach v. Vaillant*, 419 So.2d 624, 626 (Fla. 1982) (emphasis added).  Here, the scope of the Florida courts' review encompassed the claim Persaud now brings in federal court—that he was denied procedural due process because he did not receive fair notice or an adequate opportunity to be heard before the Town refused to approve Persaud's liquor license.  Thus, even if administrative approval of a liquor license constituted a property right, appeal to the state court allowed Persaud to pursue all the relief warranted and, ultimately, *did* provide Persaud with all of the relief warranted.

17

Again, Persaud received declaratory judgment from the state appellate court that it did not abandon its non-conforming use of the property and that it could continue selling alcohol on the beach portion of the property. The case was then remanded to the state trial court. But before (and instead of) pursuing remedies there, Persaud filed suit in this Court. This move was dubious because the state remedies to which Persaud was clearly directed by the Florida District Court of Appeal were due to be provided to him by the Florida trial court on remand. The existence of such "satisfactory state remed[ies] mandates that [this Court] find that no procedural due process violation occurred." *McKinney*, 20 F.3d at 1564. Accordingly, Persaud's procedural due process claim against the Town under the United States Constitution is due to be dismissed.

## II. Persaud's claims asserting that the Town and Mr. Hernstadt violated his rights under the Equal Protection Clause (Counts II and IV) are due to be dismissed.

Persaud alleges that the Town and Mr. Hernstadt violated Persaud's Fourteenth Amendment right to equal protection under the law by not treating Persaud "equally as other similar residents of the Town." (Doc. 36 at ¶¶ 58–78, 86–106). These claims appear to pertain to the sign violations, beach chair rental violations, and parking lot violations introduced by Persaud for the first time in this Fourth Amended Complaint. (*See id.* at ¶ 42.) Defendants move to dismiss these claims asserting that Persaud has failed to establish any similarly situated comparators, Mr. Hernstadt is protected by qualified immunity, and Persaud's claims are barred by the statute of limitations. (Doc. 37 at 12–20). The Court finds

that Persaud has failed to state a prima facie "class of one" equal protection claim, and accordingly, these new claims are due to be dismissed.

**A. Persaud's class of one equal protection claim against the Town is due to be dismissed because Persaud has failed to identify any similarly situated individuals who were allegedly treated more favorably by the Town.**

A "class of one" equal protection claim does not allege discrimination against a protected class, but rather asserts that the plaintiff "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Young Apts., Inc. v. Town of Jupiter, Fla.*, 529 F.3d 1027, 1032 n.1 (11th Cir. 2008) (quotation omitted). To prove a "class of one" claim, the plaintiff must show (1) that he was treated differently from other similarly situated individuals, and (2) that the defendant unequally applied a facially neutral ordinance for the purpose of discriminating against him. *Id.* at 1045. That is, the plaintiff alleges that it has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *See Sioux City Bridge Co. v. Dakota Cnty.*, 260 U.S. 441, 445 (1923). Here, Persaud's "class of one" claims against the Town and Mr. Hernstadt fail to meet either requirement.

With respect to the first prong, the Eleventh Circuit has held that the "similarly situated" requirement must be rigorously applied in the context of class of one claims. *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1275 (11th Cir. 2008). Employing "[t]oo broad a definition of 'similarly situated' could subject nearly all state regulatory decisions to constitutional review in federal court and

19

deny state regulators the critical discretion they need to effectively perform their duties." *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1203 (11th Cir. 2007).  Plaintiffs are not permitted to "rely on broad generalities in identifying a comparator."  *Id.* at 1204.  The Eleventh Circuit has made it clear that to be deemed similarly situated, a plaintiff must demonstrate that it "and [its] proffered comparators were similarly situated in all material respects."  *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1218 (11th Cir. 2019).

Persaud's class of one claim falls short.  Indeed, Persaud's Complaint makes only the barest conclusory assertion that he is "not being treated equally as other similar residents of the [Town]."  (Doc. 36 at ¶¶ 60, 88).  Persaud believes that it was discriminated against because "the [Town] has not treated anyone else in a similar situation in a similar manner."  (*Id.* at ¶ 60).  And "Persaud is being intentionally treated differently from others similarly situated and the City has substantial knowledge of these facts."  (*Id.* at ¶ 61).  Nowhere, does Persaud allege who its similarly situated comparators are or in what sense they are similarly situated.  The only thing that comes close to an allegation of a proffered comparator is a list of four other commercial properties in the Town who were allegedly granted permission from the Town to transfer their watersports vendor licenses.  (*Id.* at ¶ 47).  But Persaud's class of one equal protection claims pertain to sign violations, beach chair rental violations, and parking lot violations, not to an inability to transfer watersports vendor licenses.  Thus, these businesses do not qualify under the "nearly identical" or "same or similar" standards.  Because Persaud has failed to

20

identify similarly situated comparators that were treated differently than Persaud, Persaud has failed to make out a prima facie case for class of one discrimination under the equal protection clause. *See Lewis*, 918 F.3d at 1231. Persaud's claim for equal protection clause violations against the Town are therefore due to be dismissed.

### B. Persaud's class of one equal protection claim against Mr. Hernstadt is also due to be dismissed because Mr. Hernstadt is a public official entitled to qualified immunity.

Defendants have also moved to dismiss Persaud's equal protection violation claims against Mr. Hernstadt arguing that Mr. Hernstadt is entitled to qualified immunity. Where a qualified immunity defense is asserted, courts must first address such a defense before proceeding to defendant's alleged liability for the underlying constitutional claims. *See Jacoby v. Baldwin Cnty.*, 835 F.3d 1338, 1343–44 (11th Cir. 2016). Qualified immunity shields public officials from civil damages "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). It is uncontested that Mr. Hernstadt, as the Town Manager of Fort Myers Beach, Florida, is a public official. (See Doc. 37 at 15–18; Doc. 40 at 15.) "An official asserting that he is entitled to the protection of qualified immunity must initially establish that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007). Once this showing has been made, the burden shifts to the plaintiff. *Id.* Here, Persaud has not disputed that Mr. Hernstadt was

21

acting within the scope of his discretionary authority, (*see* Doc. 40 at 15), so Persaud bears the burden of overcoming Mr. Hernstadt's qualified immunity defense.

To defeat a public official's qualified immunity defense, a plaintiff must demonstrate first, that the defendant violated a constitutional right and second, that the violation was clearly established. *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007). "If the official did not violate the law, the inquiry ends." *Griffin Indus.*, 496 F.3d at 1200. And "[o]nly when the official violated the law and the illegality of his conduct was clearly established must the court deny him the protection of qualified immunity." *Id.* (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1355 (11th Cir. 2002)).

Here, there is no indication that Mr. Hernstadt violated the law in the first instance. Persaud argues that Mr. Hernstadt enforced fines on Persaud for its sign, beach chair, parking violations in a discriminatory manner and "based on animus towards Persaud." (Doc. 36 at ¶¶ 90–91). Persaud offers no substantiation for these claims, however. As discussed above, Persaud has failed to make even the barest allegation that it was treated differently than any other business on Fort Myers Beach because it has not identified a single, comparable business that was allegedly treated more favorably by the Town and Mr. Hernstadt with respect to liquor licenses, beach chair rentals, signs, or parking. Ultimately, mere speculation is insufficient to establish a constitutional violation. *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (explaining that a complaint must allege facts from which the inference of a constitutional violation is plausible, not merely

speculative); *McDowell v. Brown*, 392 F.3d 1283, (11th Cir. 2004) ("To hold a municipality liable for any conceivable constitutional violation, whether based on past concrete injury or mere speculation, would erode its ability to manage and govern.").  Accordingly, Persaud's equal protection violation claim against Mr. Hernstadt is also due to be dismissed.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**. Persaud's Fourth Amended Complaint is **DISMISSED with prejudice**.  The Clerk is **DIRECTED** to **TERMINATE** all existing deadlines and **CLOSE** the file.

Ordered at Fort Myers, Florida on February 21, 2023.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE